Estate of Benjamin F. Pepper, Deceased, Frances D. Pepper, Administratrix, and Frances D. Pepper, Surviving Spouse v. Commissioner.
Estate of Pepper v. Commissioner
Docket No. 58984.
United States Tax Court
T.C. Memo 1956-167; 1956 Tax Ct. Memo LEXIS 125; 15 T.C.M. (CCH) 883; T.C.M. (RIA) 56167; July 17, 1956
James J. Waters, Esq., Commerce Building, Kansas City, Mo., and Francis C. Quilty, Esq., for the petitioners. Claude R. Sanders, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the year 1951 in the amount of $1,523.28. The sole contested issue is whether the respondent erred in disallowing the amount of $2,250 of the total amount claimed as medical expenses in computing the allowable deduction for medical care under section 23(x) of the Internal Revenue Code of 1939. The case was submitted on a partial stipulation of facts, oral testimony, and a deposition. Findings of Fact The stipulated facts are found accordingly. Frances D. Pepper is an individual *126 and administratrix of the estate of and surviving spouse of Benjamin F. Pepper, deceased. She and the decedent filed their joint income tax return for the calendar year 1951 with the collector of internal revenue for the third district of New York. Benjamin F. Pepper died on February 28, 1953. During the year 1951 Frances, her husband, and infant child resided in New York, New York. Frances first saw Dr. John McDowell McKinney, a medical doctor and a qualified psychiatrist, on October 17, 1950. The doctor saw her several times each month during the period October to December 1950; he saw her once in January 1951 and on the 24th and 26th of March 1951. The doctor's diagnosis was that Frances was a cyclothymic personality, subject to spells of severe depression, which condition was aggravated somewhat by her heavy drinking. On February 14, 1951, Frances gave birth to a child. In March 1951 she had a severe mental upset. She did not want to be institutionalized and as an alternative Dr. McKinney recommended that she take a trip to California to visit her sister. The doctor thought that such a trip should be of great therapeutic benefit. On or about May 6, 1951, Frances and her *127 child travelled by air to California. They stayed at a motel situated in one of the suburbs of Santa Anita, California. While at the motel Frances spent her time caring for her infant child and sitting in the sun. Her sister visited her daily. On or about May 15, 1951, Deft B. Hyde, a family friend living in New York City, arrived unexpectedly at the motel where Frances was staying, and obtained quarters in another part of the motel. Deft B. Hyde remained in California only four or five days. Decedent paid the transportation cost and other expenses of Mrs. Hyde's trip in the amount of $759.97. On June 13, 1951, Frances was hospitalized as a result of taking an overdose of sleeping tablets with suicidal intent. On June 23, 1951, at the direction of Dr. McKinney, she was transferred to the Institute of Living at Hartford, Connecticut, where she remained until November 1951. While Frances was a patient at such Institute decedent was not allowed to visit her during the first month; for the next few months he was allowed to visit her for a few hours on Sunday; and toward the end of her stay she was allowed to go to dinner and for automobile rides on weekends. On their joint return *128 for 1951 Frances and decedent claimed medical expenses of $9,228.88 and a maximum deduction of $3,750. Included in the amount of $9,228.88 is the sum of $2,250 designated on the return as miscellaneous medical expenses. In determining the deficiency the respondent disallowed the amount of $2,250 as not constituting medical expenses under section 23(x) of the Internal Revenue Code of 1939. This adjustment had the effect of reducing the claimed deduction for medical expenses from $3,750 to $1,572.03, which latter amount was allowed as a medical deduction. Frances has offered in evidence cancelled checks drawn by her deceased husband aggregating $2,184.95, which amount it is claimed constitutes medical expenses. The purposes and the amounts spent are as follows: Frances's trip to California
$ 500.00
Deft B. Hyde's trip to California
759.97
Rental of cottage at Niantic, Connecti-
cut
500.00
Three checks drawn to cash and en-
dorsed by Niantic Public Market in
the amount of $100 each
300.00
Four checks drawn to and cashed by
Chapel St. Garage for rental of auto-
mobile
124.98
$2,184.95
During the taxable year 1951 Frances and the decedent expended the *129 amount of $7,603.86 for medical care. Opinion LEMIRE, Judge: The question presented is whether the amounts in controversy were expended for medical care within the meaning of section 23(x) of the Internal Revenue Code of 1939, as contended by petitioner, or are nondeductible personal, living, or family expenses under section 24(a)(1) of the Code. After due consideration of the record we are satisfied that the amount of $759.97 for the California trip of Deft B. Hyde, the $500 for rental of a cottage, and the three checks totaling $300 cashed at the Niantic Public Market have not been shown to have been medical expenses. The remaining items in controversy are the $500 spent in connection with Frances's trip to California and the amount of $124.98 for rental of an automobile to take Frances out for rides while she was convalescing at the Institute of Living. While these items are somewhat borderline in character and could be characterized as personal expenses under a given set of facts, we are of the opinion that considered in the light of the facts here presented they meet the tests usually applied for determining what constitutes a medical expense within the meaning of section *130 23(x). Cf. Edward A. Havey, 12 T.C. 409. Frances's trip to California was undertaken at the direction of her doctor to avoid, if possible, the necessity of placing her in an institution. Dr. McKinney testified that it was his belief that the trip would be of therapeutic value. The rental payments for an automobile to take Frances for rides while a patient at the Institute of Living were incurred at the direction of the resident physician. While no physician from the Institute was sworn, Frances's personal physician, Dr. McKinney, testified that visits by the husband and automobile rides were accepted therapeutic treatment for her psychiatric condition. He further testified that such treatment was more important in cases of mental illness than in cases of bodily ailment. These payments, aggregating $624.98, are reasonable in amount and in our opinion bear a direct and proximate therapeutic relationship to Frances's mental condition. Therefore, we hold they were made for medical care within the purview of section 23(x). The amount of $624.98 added to the amount of $6,978.88, allowed as medical expense by the respondent, gives a total of $7,603.86, which we have found *131 as a fact was the amount expended by Frances and her deceased husband in the taxable year 1951 for medical care. Petitioners concede that the disallowance of the amount of $130 claimed as a deduction for excise taxes paid in 1951 was proper. The medical deduction for the taxable year 1951 will be computed in accordance herewith. Decision will be entered under Rule 50.