Arthur D. Foyer and Estate of Bel Foyer, Deceased, Arthur D. Foyer, Executor v. Commissioner.
Foyer v. Commissioner
Docket No. 71987.
United States Tax Court
T.C. Memo 1960-244; 1960 Tax Ct. Memo LEXIS 44; 19 T.C.M. (CCH) 1370; T.C.M. (RIA) 60244; November 21, 1960
Arthur D. Foyer, pro se, 2133 Ridge Ave., Evanston, Ill. Charles B. Wolfe, Jr., Esq., for the respondent. TIETJENS
TIETJENS, Judge: The Commissioner determined a deficiency in income tax for the year 1954 in the amount of $349.38. The petitioners claim an overpayment of income tax for the taxable *45 year in the amount of $437.44. The questions presented are: (1) What are the allowable medical expense deductions under section 213, I.R.C. 1954; (2) what are the allowable tax deductions under section 164, I.R.C. 1954; and (3) are certain of the automobile expenses claimed under section 162, I.R.C. 1954, nondeductible personal expenses. The stipulated facts are so found and the stipulation is included herein by this reference. For the taxable year involved Arthur D. Foyer and Bel Foyer, hereinafter referred to as petitioners, were husband and wife. Petitioners filed a timely joint income tax return for 1954 with the district director of internal revenue, Chicago, Illinois. Bel Foyer died in 1960. Arthur was a traveling salesman and used his automobile in his business. His sales territory covered Ohio, Michigan, Pennsylvania, and New York. He retired from employment in September 1954. Both Bel and Arthur were 75 at the time. In 1940 Bel was bedridden from the effects of bronchial asthma and pneumonia. These respiratory ailments had greatly weakened her and she had lost vitality. She had been occasionally treated *46 by the family physician for an asthmatic condition from 1934 to 1940. In 1940 Arthur took Bel to Tucson, Arizona, to convalesce in a more conducive climate. She regained her strength and from that time she has required no further medical attention for the respiratory condition. Petitioners returned to and lived in Tucson for a portion of each winter and spring from 1940 until Bel's death. In 1953 Arthur and Bel went to Honolulu, Hawaii, for the months of November and December and part of January as he felt that the climate at that time of the year in Tucson was too severe. They were accompanied by their daughter on this trip and on their return route to Chicago they stopped to visit another daughter in Portland, Oregon. In 1954 they returned to Honolulu at approximately the same time and stayed for the same period from November to mid-January. Their daughter who had accompanied them in 1953 had preceded them in 1954 in order to secure a teaching position in Honolulu. They again stopped in Portland, Oregon, on their return trip to Chicago. Arthur did not take Bel to Honolulu at the direction or suggestion of a physician; however, upon his return to Chicago he did advise the family *47 physician of these trips to Hawaii. On their 1954 income tax return petitioners claimed among the itemized deductions the following: Taxes - Sales, gas, etc.
$ 200.00
Medical and dental expense
1,100.50
Auto depreciation
700.00
On July 12, 1957, petitioners filed an amended joint income tax return with the district director of internal revenue at Chicago, Illinois, on which some of the itemized deductions claimed were as follows: Taxes - Sales, gas, etc.
$ 300.00
Medical and dental expense
1,448.80
Auto depreciation
700.00
On February 10, 1958, the Commissioner sent a notice of deficiency to petitioners for the taxable year 1954 which determined a deficiency in income tax of $349.38. The deficiency was determined with reference to the original joint income tax return. The Commissioner disallowed deductions in the following amounts: Medical deduction
$1,032.50
Taxes
100.00
Auto expense
350.00
By their original and amended joint income tax returns and a petition to revise medical deductions, the aggregate amount of $3,254.80 is claimed by the petitioners as medical expenses. These expenses are: Transportation costs, hotels and meals
from Chicago, Illinois to Honolulu,
Hawaii and return
$1,032.50
Transportation costs, hotels and meals
from Chicago, Illinois to Tucson,
Arizona and return
348.30
Hotel costs, Honolulu
884.00
Hotel costs, Tucson
990.00
$3,254.80
*48 The medical expenses claimed on the original joint income tax return of petitioners and allowed by the Commissioner were: Medical care - Honuolulu
$17.00
X-Ray
10.00
Medical examination - Arthur
16.00
Dental work
25.00
$68.00
The trips to Arizona and Hawaii in 1954 were taken primarily for the pleasure of the petitioners and the fact that the climatic conditions may have been beneficial to Bel was a collateral consideration. Taxes (sales, gas, etc.) were paid by the petitioners in the amount of $150 in 1954. Opinion The first issue relates to medical expense deductions claimed under section 213, I.R.C. 1954. [1] The Commissioner on the original return disallowed as medical expenses the traveling expenses claimed by the petitioners to Honolulu, Hawaii. Petitioners filed an amended return on which they also claimed a deduction for the travel expenses of the trip to Tucson. At the time of the trial petitioners amended their petition by also claiming the cost of lodging in Honolulu and Tucson as a medical expense. *49 As was said in L. Keever Stringham, 12 T.C. 580, 584 (1949), affd. 183 F. 2d 579 (C.A. 6), "many expenses are so personal in nature that they may only in rare situations lose their identity as ordinary personal expenses and acquire deductibility as amounts claimed primarily for the prevention or alleviation of disease." Trips such as the ones in question "to resort areas are naturally suspect when the expenses therefor are claimed as a medical deduction, and we must carefully scrutinize the facts to make sure that the alleged medical reasons were not merely a pretext for a vacation trip." Max Carasso, 34 T.C. - (September 30, 1960). Therefore in order to resolve the question of whether the transportation expense is medical or personal, we must apply the template which we set forth in our holding in Edward A. Havey, 12 T.C. 409 (1949) where we said the questions to be asked in order to ascertain the deductibility of the amount expended are: Was it incurred at the direction or suggestion of a physician; did the treatment bear directly on the physical condition in question; did the treatment bear such a direct or proximate therapeutic relation *50 to the bodily condition as to justify a reasonable belief the same would be efficacious; was the treatment so proximate in time to the onset or recurrence of the disease or condition as to make one the true occasion of the other, thus eliminating expense incurred for general, as contrasted with some specific, physical improvement? Cf. L. Keever Stringham, supra. There is no evidence that either trip was taken at the direction or suggestion of a physician. Although a serious respiratory condition occurred in 1940 from a combination of asthma and pneumonia, fourteen years elapsed between that illness and the time the expenditures in question were made. During this intervening period Bel required no further medical attention for the respiratory condition. "We do not question the fact that the trips may have been beneficial to [Bel] * * *. There can be no question that carefully chosen changes of climate are beneficial to most persons, or that vacations at appropriate resorts are desirable and conducive to better health. The record fails to show, however, that the benefit derived by the wife was in any respect different from that enjoyed by any vacationer at the same *51 resorts at the same time." Edward A. Havey, supra, at p. 412. "A line must be drawn somewhere between that which is a personal expense and that which is incurred primarily for the prevention of illness and disease. One may live in such a way during one's whole lifetime so as to prevent the recurrence of illness and disease and so as to maintain the best health which is possible after some vital organ has become impaired, or one's health has become less than the health of a thoroughly normal and well person." Frances Hoffman, 17 T.C. 1380, 1385 (1952). However, in order to be deductible as a medical expense "there must be some existing or imminent illness or existing physical defect which the trip is supposed to alleviate, cure, or prevent." Samuel Dobkin, 15 T.C. 886, 888 (1950) and not merely to benefit or improve the general health. Arthur testified he took Bel to Tucson and Honolulu because he felt the climates in these places to be beneficial to her respiratory condition. However, the existence of a chronic respiratory condition which can be alleviated by going to a more favorable climate is not a carte balanche authorizing travels throughout *52 the world without medical advice of any type in search of climates offering greater relief to the condition. The Court in Bertha M. Rodgers v. Commissioner, 241 F. 2d 552 (C.A. 8, 1957), affirming 25 T.C. 254, commenting on this point said: we think that the Tax Court properly would be entitled to regard general trips taken by taxpayers to a more salubrious climate, in escape from unfavorable weather seasons of their home localities, as not constituting deductible medical care for tax purposes, merely because the trips had been recommended by a physician and were capable of being of general benefit to health. Similarly, it seems to us, would the Tax Court ordinarily be entitled to regard the costs of trips, taken by taxpayers to diminish the discomfort or to stay the operativeness, during a period of temporary sojourn, of some chronic condition, such as arthritis, high blood pressure, respiratory difficulty or sinus trouble, but serving at the same time as an opportunity for vacation pleasure or resort enjoyment, as primarily constituting personal rather than medical expenses. And even with more reason, in our opinion, could the costs of trips taken *53 periodically by a taxpayer to a more salubrious climate, because of some seasonal unfavorableness in the climate of his home, be regarded as not involving such extraordinariness of fact and circumstance as would lift these costs from the status of living expenses to medical care, where the trips had become such a regular incident as to amount controllingly to a choice by the taxpayer in his mode of life. * * * The trip to Honolulu was made after Arthur had retired and while in Honolulu petitioners visited a daughter who was teaching there, and on their return route to Chicago they stopped to visit another daughter in Portland, Oregon. "Although we do not feel that the bona fides of a taxpayer's motive in incurring an expense should be determinative of its deductibility, we do believe that we should accord it considerable weight." L. Keever Stringham, supra, at p. 585. Although the trips may have been beneficial to Bel, the other circumstances present indicate that they were at least in some measure in the nature of a vacation and for family visits. There was no proof that the primary purpose of the trips was the cure, prevention or alleviation of a disease or physical *54 condition. "While a taxpayer is certainly not required to live in a manner leading to the fewest tax benefits, we do not think, under the circumstances described, that Congress intended to subsidize the cost of the taxpayer's travel * * * [to] resort hotels even though it would be detrimental to his health to remain throughout the year in the locality in which he choose to make his home." Bertha M. Rodgers, 25 T.C. 254, 261 (1955), affd., supra. The respondent's disallowance of the deduction for expenses of the trips is sustained. Having held that the trips were vacations it is unnecessary to discuss the question whether additional medical expenses claimed by the petitioners for food and lodging while in Tucson and Honolulu are allowable. They clearly are not. See Max Carasso, supra. The second issue deals with tax deductions under section 164, I.R.C. 1954. [2] The petitioners claimed $200 on their original 1954 income tax return. The Commissioner in his deficiency notice disallowed $100 thereof. The petitioners thereafter in their amended return $300claimed as the tax deduction. *55 Though little evidence on the point was offered at the trial, when we consider the amounts expended by the petitioners for hotel accommodations and meals as well as other purchases corresponding to their standard of living we find under the Cohan rule [3] that the amount of $150 was paid in various taxes by the petitioners. The third issue relates to automobile expenses claimed under section 162, I.R.C. 1954. [4] The petitioners claimed auto expenses in the aggregate amount of $984. The Commissioner allocated this amount between personal and business expenses and determined that $350 should be disallowed as personal expenses. The burden is upon the petitioner to show that the allocation is incorrect. The petitioners call attention to the fact that Arthur retired in September and that during November and December they were in Honolulu. However, it can be deduced from Arthur's testimony that he used the car to some extent for his personal convenience prior to his retirement. He testified that he drove to Arizona in 1954. This use of the car was definitely for his personal convenience as it had no relationship *56 to his business as a traveling salesman in his sales area which covered Ohio, Michigan, Pennsylvania, and New York. There is no evidence of the total mileage of the car in 1954 nor the mileage in business use or personal use. In the absence of such evidence we are unable to find error in the respondent's allocation and it is sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction. - There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152) - * * *
(e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or (B) for transportation primarily for and essential to medical care referred to in subparagraph (A).↩
2. SEC. 164. TAXES. (a) General Rule. - Except as otherwise provided in this section, there shall be allowed as a deduction taxes paid or accrued within the taxable year. * * *
(c) Certain Retail Sales Taxes and Gasoline Taxes. - (1) General Rule. - In the case of any State or local sales tax, if the amount of the tax is separately stated, then, to the extent that the amount so stated is paid by the consumer (otherwise than in connection with the consumer's trade or business) to his seller, such amount shall be allowed as a deduction to the consumer as if it constituted a tax imposed on, and paid by, such consumer.↩
3. 39 F. 2d 540↩ (C.A. 2, 1930).
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and↩