Estate of Margherita Gertrude Maria Diamond, Deceased, by Maurice Diamond, Executor, and Maurice Diamond, Individually v. Commissioner. Maurice Diamond, individually and Estate of Margherita Gertrude Maria Diamond, Deceased, by Maurice Diamond, Executor v. Commissioner.
Estate of Diamond v. Commissioner
Docket Nos. 89444, 91892.
United States Tax Court
T.C. Memo 1963-214; 1963 Tax Ct. Memo LEXIS 131; 22 T.C.M. (CCH) 1073; T.C.M. (RIA) 63214; August 14, 1963. *131 Held: 1. Petitioner is not entitled to deduct expenses incurred while seeking new employment under the provisions of section 212, I.R.C. 1954, for the year 1956. 2. Petitioner has failed to prove: (a) the proximate relationship of certain expenses to an activity carried on for the production of income, (b) that the expenses were ordinary and necessary, and/or (c) what amount of his total expenses, if any, could be allocated to that activity for 1956. 3. Petitioner is not entitled to deduct personal living expenses while seeking new employment during 1956 under the authority of sections 212 and 262, I.R.C. 1954. 4. Petitioner is liable for an addition to tax under the provisions of section 6654, I.R.C. 1954, for the year 1956. 5. Petitioner's medical expenses for 1959 totaled $1,794.40. 6. Petitioner incurred ordinary and necessary business expenses of $1,600 in 1959 of which $600 was reimbursed to him by his employer. Sidney Meyers, 51 Chambers St., New York, N. Y., for the petitioners. Robert A. Trevisani for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax and an addition to tax under section 6654, 1954 Code, as follows: Docket
Addition to
No.
Petitioner
fear
Deficiency
Tax § 6654
89444
Estate of Margherita Gertrude Maria Diamond,
Deceased, et al.
1956
$1,023.21
$47.57
91892
Maurice Diamond, individually and Estate of
Margherita Gertrude Maria Diamond, De-
ceased, et al.
1959
$ 992.81
*133 The adjustments and explanation of adjustments in Docket No. 89444 for the year 1956 are set forth in the notice of deficiency as follows: ADJUSTMENTS TO TAXABLE INCOME
Taxable income as disclosed by return
$11,352.83
Unallowable deductions and additional income: (a) Contributions
$ 75.00
(b) Interest
22.39
(c) Taxes
80.00
(d) Miscellaneous
4,319.59
4,496.98
Total
$15,849.81
Nontaxable income and additional deductions: (e) Standard deduction
1,000.00
Taxable income as corrected
$14,849.81
EXPLANATION OF ADJUSTMENTS (a) to (d) - Itemized deductions claimed by you on your return are disallowed for lack of substantiation as follows: Contributions
$ 75.00
Interest
22.39
Taxes
80.00
Miscellaneous
4,319.59
Total
$4,496.98
With reference to the above miscellaneous deduction of $4,319.59, it is further determined that, even if substantiated, the amount of $4,037.69 included therein, is not an allowable deduction because you have not shown that this amount was incurred in and towards production and collection of income as claimed by you. (e) A $1,000.00 standard deduction has been allowed in lieu of the itemized *134 deductions disallowed. The notice of deficiency sets forth the adjustments and explanation of adjustments in Docket No. 91892 for the year 1959 as follows: ADJUSTMENTS TO INCOME
Taxable income as disclosed by return
$10,569.95
Unallowable deductions and additional income: (a) Travel and entertainment expenses
$2,000.00
(b) Medical expenses
1,500.00
3,500.00
Taxable income as adjusted
$14,069.95
EXPLANATION OF ADJUSTMENTS (a) and (b) Your claimed deductions for travel and entertainment expenses and medical expenses have been disallowed to the extent indicated inasmuch as they have not been established by you as allowable under any of the sections of the Internal Revenue Code. The respondent now concedes that petitioner incurred medical expenses of $1,794.40 in the taxable year 1959. The petitioner introduced no evidence with respect to the claimed deductions for 1956 totaling $459.29 for contributions, interest, taxes, bank custodian fees, and preparation of tax returns and it is assumed that he has abandoned his allegations of error as to these items. The issues remaining for our consideration in these consolidated proceedings are whether *135 or not (1) petitioner incurred ordinary and necessary expenses in and for the production or collection of income during 1956, (2) petitioner is liable for an addition to tax under the provisions of section 6654 of the 1954 Code for the taxable year 1956, (3) petitioner incurred medical expenses in excess of that conceded by respondent during 1959, and (4) petitioner incurred ordinary and necessary business expenses of $2,881.42 in excess of the amounts reimbursed by his employer during 1959. Findings of Fact Margherita Gertrude Maria Diamond, now deceased, was the wife of Maurice Diamond. Their joint income tax returns for 1956 and 1959 were filed with the district director of internal revenue, Upper Manhattan, New York. The term petitioner as hereinafter used will refer to Maurice Diamond. In 1956 petitioner was a British subject living in England. At that time he also had status as a registered alien of the United States. In March 1956 petitioner made a trip to the United States for the purposes of seeking employment with Avon Publications, Inc., hereinafter called Avon, and to assist the president of the Focal Press Company of London, hereinafter referred to as Focal, in obtaining *136 publication of an encyclopedia. Petitioner's discussions with Avon resulted in a contract of employment executed March 17, 1956. Under the terms of that contract Avon engaged petitioner as a consultant in connection with Avon's foreign operations at a salary of $100 a week. Petitioner's duties were to be performed in England. Petitioner was a stockholder of Avon and at one time had been an employee. Petitioner was not an employee of Focal. His agreement with Focal was to the effect that petitioner would be reimbursed for his expenses and would receive compensation if he succeeded in having the encyclopedia published in the United States, to which end he was not successful. After securing his employment contract with Avon petitioner returned to England. With respect to this trip to the United States petitioner claimed deductions of $800 for airplane fare and $492.97 for hotel costs and miscellaneous expenses. In August 1956 petitioner again returned to the United States so he could appear as a witness on behalf of Avon which was then involved in litigation. The expenses incident to this trip and for petitioner's expenses while in the United States up to the conclusion of the litigation *137 were paid by Avon and there is no issue before us concerning these expenses. After the litigation ended in October 1956 petitioner remained in the United States to seek employment. He intended to supplement his work for Avon and if successful he intended to perform this work in England. He did not secure employment until March 1957 at which time he was employed by Almat Publishing Company, hereinafter called Almat, for work to be performed in the United States. Petitioner deducted the cost of his stay in the United States from the conclusion of the litigation in October 1956 to the end of 1956. These costs consisted of the following: Hotel and incidental expenses
$ 803.04
Taxi fares incurred in seeking
employment
330.00
Food and other expenses
676.96
$1,810.00
The respondent disallowed all of petitioner's claimed deductions for 1956 and in lieu thereof used a standard deduction of $1,000. In 1959 petitioner was employed by Almat as general manager and vice president and during said year he resided in New York City. He had been employed by Almat since 1957. Petitioner's duties for Almat included promotion of the sale of paper back books and magazines. He *138 visited wholesalers and retailers in order to insure adequate distribution and retail display of the publications. In addition to incurring $800 in automobile travel expenses petitioner expended $800 for the entertainment of the wholesalers and managers and for other costs, of which $600 was reimbursed by Almat. During 1959 petitioner suffered an attack of pneumonia and was hospitalized. After he was released from the hospital, upon the advice of his physician, he took a cruise for sun and relaxation. The trip was prescribed to improve his general health and it was not prescribed to cure a specific ailment of petitioner. While on the trip petitioner suffered a relapse and he was removed from the ship and hospitalized in Nassau. The net cost of the cruise amounted to $340 and his return fare to the United States totaled $104.70. Both expenses were included as medical deductions for 1959 by petitioner. Opinion 1956 BLACK, Judge: Although it appears from the record that petitioner was a resident of England during 1956 and earned most of his salary from Avon for services performed in that country, all of his income from Avon was included in his 1956 return and there is no issue *139 raised by the pleadings for excluding any of these amounts. Petitioner does contend that the amounts expended by him for travel, entertainment, hotels, and other expenses in the United States in the amount of $4,037.69 are deductible expenses under the provisions of section 212 of the 1954 Code, [1] expenses incurred in the production or collection of income. However, it appears to us that petitioner's expenses with respect to this first trip to the United States in 1956 were incurred in seeking new employment. He came to the United States in March 1956 to meet with Avon concerning his possible employment in a consulting capacity in England. After signing an employment contract with Avon, he immediately returned to England. It has been well established that expenses incurred in seeking new employment do not qualify for deduction, *140 Morton Frank, 20 T.C. 511 (1953); cf. Henry G. Owen, 23 T.C. 377 (1954), and Frank B. Polachek, 22 T.C. 858 (1954); see also section 1.212-1(f), Income Tax Regs.
Petitioner's other reason for coming to the United States in March 1956 was to see if he could help in obtaining publication of an encyclopedia. We believe that this was a secondary purpose and that his primary purpose for coming to the United States was to obtain employment on a consulting basis for work to be performed in England. Petitioner's own testimony indicates that he discontinued the encyclopedia matter as soon as he became a representative of Avon on March 17, 1956, and that he immediately returned to England after obtaining the Avon employment contract. He never received any compensation or reimbursement of expenses from Focal. As to this secondary purpose, petitioner has failed to show what expenses, if any, could properly be allocated to this endeavor since his expenses for the March trip were shown only in total amounts. Furthermore, in order for an expense to be deductible under section 212 petitioner must show not only that it is an ordinary *141 and necessary expense but also that the expense bears a proximate relation to the activities carried on, cf. Bingham's Trust v. Commissioner, 325 U.S. 365 (1945). The record in the present case is silent as to the ordinary, necessary, and proximate relationships of the expenses and the expectation or hope of producing income. In any event, as we stated earlier, there is no evidence as to the amount of these expenses that could properly be allocated to this secondary activity. Accordingly, we find for the respondent as to these claimed deductions as a matter of failure of proof. In summary, we find that the expenditures made during petitioner's first trip in 1956 were incurred in seeking new employment and in attempting to create new rights to income by way of securing publication of the encyclopedia. We find that such expenditures are not deductible as nontrade or nonbusiness expenses. With regard to his second trip to the United States in October 1956, petitioner deducted his expenses from October to December 31, 1956. The expenses included the cost of renting an apartment in a hotel on a monthly sublease basis totaling $803.04, estimated expenditures for taxi fares *142 of $330 incurred for the purpose of visiting publishers to secure employment, and $676.96 for food and "other living expenses." It appears that petitioner here claims a deduction for expenses incurred in seeking new employment and also seeks a deduction equal to his living costs during the period in which he sought such employment. Section 262 of the 1954 Code [2] prohibits deductions for personal or living expenses and the authority cited earlier prohibits the allowance of costs while seeking new employment. Since petitioner failed to introduce any evidence concerning the deductions for contributions, interest, taxes, custodian fees, and for preparation of tax returns, we find that respondent properly disallowed all of the claimed deductions for 1956 and properly allowed the standard deduction of $1,000 for that year. The other issue presented as to the taxable year 1956 concerns an addition to tax under section 6654 which provides for an addition to tax for underpayment of estimated tax. The *143 amount of the addition is arrived at by a mathematical computation. Since respondent's position has been sustained the addition will apply. 1959 Respondent now concedes that petitioner is entitled to $1,794.40 of the claimed medical expenses for 1959. With reference to this item of $1,794.40 respondent in his brief says: In support of his position the petitioner introduced cancelled checks and receipts totaling $1,688.40. Respondent concedes that these checks represent monies spent by the petitioner during the year 1959 which are properly deductible as medical expenses under the provisions of Sec. 213 except as to one item of $45.00. This item is evidenced by a receipt dated December 31, 1958 from one Hagerman, apparently a registered nurse. Since the item was paid in 1958 it is not deductible against petitioner's 1959 income. Respondent also acknowledges that the petitioner incurred additional medical costs while on a sea voyage consisting of $25.00 paid to the ship's doctor $90.00 of doctor's expenses at a Nassau Hospital and a further $36.00 charged for nursing care at that same hospital. Respondent, therefore, admits that petitioner incurred properly deductible medical expenses *144 of $1,794.40 during the taxable year. The only issue remaining as to this category of deductions concerns petitioner's cruise. Petitioner claims that he is entitled to an additional deduction for medical expenses in addition to the $1,794.40 conceded by respondent, as follows: Amount paid out for Cubar cruise
$310.00
Return trip to the United States from
Nassau
104.70
Total
$444.70 A taxpayer may only deduct transportation costs as a medical expense when the expenditure is essential to the rendition of medical care or the alleviation or mitigation of a specific chronic ailment. [3] Deductible expenses falling within this category are to be sharply distinguished from transportation expenses incident to a trip undertaken merely for the general improvement of the taxpayer's health. The cruise was suggested by petitioner's physician in terms of its being helpful to petitioner's general wellbeing and general health after his attack of pneumonia. There is nothing in the record to suggest that the cruise was prescribed to alleviate, cure, or mitigate a specific ailment suffered by petitioner. The petitioner himself speaks of the trip as a vacation. The cost of a vacation, *145 though highly beneficial to one's general health, cannot be deducted as a medical expense since it is more properly considered personal in nature, Edward A. Havey, 12 T.C. 409 (1949). Thus, unless the true proximate occasion of travel is the treatment of a specific ailment its incident expenses are nondeductible personal living costs, Samuel Dobkin, 15 T.C. 886 (1950). There is no convincing evidence to us in this case that the cruise was prescribed for any reason other than to generally improve petitioner's health. Such a prescription is insufficient, we think, to carry the costs of transportation out of the realm of personal living expenses, Samuel Dobkin, supra.
We find that the *146 claimed medical expense deduction taken for the cost of the cruise was properly disallowed and that petitioner's medical expenses totaled $1,794.40 for 1959 as the Commissioner has conceded. The remaining issue concerns the travel and entertainment expenses of $2,881.42 claimed by petitioner in 1959. Respondent has allowed $881.42 of this amount and it is to be remembered that petitioner was reimbursed $600 by his employer for such expenses. Petitioner claims $2,881.42 of costs was incurred in excess of the $600 allowance. There is no doubt in our mind that petitioner had deductible expenditures in connection with his business and the only question is as to the proper amount. Petitioner's evidence as to these expenditures is not presented in any great detail or substantiation. Using our best judgment and applying the Cohan doctrine announced in Cohan v. Commissioner, 39 F. 2d 540 (1930), we believe and have so found that petitioner incurred $800 in automobile and traveling expenses and $800 in other expenses incurred in connection with his employment, of which $600 was reimbursed by his employer. Accordingly, of the $1,000 of expenses not reimbursed by his employer, *147 respondent has allowed $881.42 so that we find petitioner is entitled to an additional $118.58 in deductions over that calculated by respondent. Decision will be entered for the respondent in Docket No. 89444. Decision will be entered under Rule 50 in Docket No. 91892. Footnotes
1. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩
2. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
3. SEC. 213 MEDICAL, DENTAL, ETC., EXPENSES. (e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or (B) for transportation primarily for and essential to medical care referred to in subparagraph (A).↩